# Wheeling.

## GRAHAM *et al.* v. GRAHAM *et al.*

Decided May 1, 1880.

1. A case in which the statute of limitations is held to apply in equity. (See opinion of the Court.)

Appeal from and *supersedeas* to two decrees of the circuit court of the county of Monroe, rendered, one on the 17th day of May, 1879, and the other on the 19th day of May, 1879, in a cause in said court then pending, wherein John Graham and others were plaintiffs, and James Graham and others were defendants, allowed upon the petition of said James Graham.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case :

On the 5th day of October, 1859, Lanty Graham, John Newlin and Florence, his wife, and Henry Miller and R. Martha Miller, his wife, brought their suit in chancery in the circuit court of Monroe county against Rebecca Graham, John Graham and Henry J. Kelly, sheriff of Monroe county, and as such administrator of the estate of Joseph Graham, deceased, and John W. Lanius, late sheriff of Monroe county, and as such administrator of the estate of Jane Graham, deceased, with the will an-

nexed.  And afterwards at the November rules, 1859, of said circuit court the plaintiffs in that suit filed their bill therein against the defendants, in which it is alleged, that " on the 28th day of December, 1812, one James Graham made his will in due form of law and soon after departed this life.  The said will was afterwards, at the February term of the county court of Monroe county, 1813, duly proved and ordered to be recorded (a copy of which is herewith exhibited as part of this bill marked number one).  By one clause of his will the testator gave to his daughter, Rebecca Graham, who was then the wife of Joseph Graham, and her children the plantation where she then lived, known by the name of the Stephenson Cabin.  He also gave her and her children his negro girl, Dinah, the land and negroes never to be disposed of out of the family, nor the increase of the negress, if any she had."

The bill further alleged, that the said Joseph Graham, the husband of said Rebecca, had recently, within a year or two, died, and that said Henry J. Kelly, sheriff of said county, is his personal representative ; that the children of the said Rebecca living at the time of making said will and probate thereof, were said Lauty Graham, John Graham, Florence Newlin and their sister Jane Graham, who departed this life after making a will, which was admitted to probate, leaving plaintiff, R. Martha Miller, her only child and heir at law, and whose estate had been committed to J. W. Lanius, late sheriff of Monroe county, with administration with the will annexed ; that the tract of land mentioned in the said clause of James Graham's will contained about two hundred and eighty-six acres, and is the same tract that is still in the possession of the said Rebecca Graham, who is living on and occupying the same in connection with her son John Graham, who is one of the joint owners, thereof, &c. ; that the negro woman, Dinah, became the mother of two sons, Ira and Stuart, and she and they are all living.  She is old, and still in possession of the said Re-

becca Graham and her son John. The said sons, Ira and Stuart, are very stout, valuable men, worth each about $1,500.00, and have very recently been sold by the said Rebecca Graham and her son John and carried out of the country.

The bill also alleged that by said will the said Rebecca took an interest of one fifth in the slaves and land. Her interest in the slaves passed immediately to her husband, but her interest in the land survives to her. Each of her said four children took a like interest in the land and slaves. The bill also alleges that the said land and slaves were held in possession by the said Joseph Graham as husband of the said Rebecca during his life, which terminated but two or three years since, and that his possession would be construed to be the joint possession of all the joint tenants and owners; that no partition of the land nor division of the slaves was ever made, and now a division of the slaves cannot be made as two of them are sold and gone to parts unknown, &c. But said Rebecca Graham and John Graham can be made to account for the values thereof, and be compelled to pay over to the plaintiffs.

The bill then prays that the land be divided according to quantity and quality; that the said Rebecca and John Graham may be compelled to pay for the two slaves, Ira and Stuart, whom they converted to their own use by sale; that the others may be sold and the proceeds divided, &c.

With this bill an official copy of the will of the said James Graham and the probate thereof was filed as exhibit number one.

The defendant, Rebecca, answered the bill, denying the claim of the plaintiffs to the land or slaves set up in the bill, claiming them as her own, and says: "It is true that she is now in possession of the old negro Dinah, who is the same woman referred to in her father's will. It is also true that the two boys, Ira and Stuart, were children of Dinah; that she held and disposed of these ne-

gro men since her husband's death. These slaves she held always as her exclusive property, allowing the claim of no one and never hearing of any until very recently." John Graham also filed his answer to the bill, which is short, and therein adopts the answer of his mother, Rebecca Graham, so far as its language is appropriate and proper, and prays to be hence dismissed. It does not appear that Henry J. Kelly, sheriff and administrator of Joseph Graham, deceased, ever answered the bill; nor does it appear that John W. Lanius, sheriff and administrator of Jane Graham, filed any answer to the said bill. It appears that on the 15th day of July, 1867, the said circuit court decided that Rebecca Graham and her four children, Lanty, Florence, John and Jane, each under and by virtue of the will of said James Graham, deceased, took an undivided estate of one fifth in the said tract of land and the slave Dinah in the bill and proceedings mentioned, and that the right of the joint owners was not barred by the statute of limitations, or the lapse of time, and that they were entitled to partition of said land, and an account of the value of said slave and her increase, and appointed three commissioners to make partition of the land in severalty, assigning plaintiff Lanty Graham one of said parts, another of said parts to plaintiffs John Newlin and Florence, his wife, one of said parts to plaintiffs Henry Miller and R. Martha, his wife, one of said parts to defendant John Graham, and the other part to defendant Rebecca Graham.

The court also in the same decree ordered Alfred Phillips, a master commissioner of the court, to take, state and report an account of the slave Dinah and her increase, their values at the time of the institution of the suit, if they remained unsold, their prices, if sold, and by whom sold, and to whom chargeable; also the value of their hires for five years before the suit was instituted, and to whom the same is chargeable, &c. The commissioner who was directed to take such account afterwards made his report to said court, and on the 25th

1880
Special Term.

Graham et al.
v.
Graham et al.

day of May, 1869, the cause was heard by the court upon the papers formerly read, and the report of said commissioner, and the exceptions filed thereto by the defendant, John Graham (which the court overruled), and upon the petition of James Graham and others to be made parties defendants in the cause; and the court decided that the account reported by said commissioner was erroneous in charging interest upon estimated rents and hires, and that the same should be modified to that extent and confirmed as to the residue ; and the court ascertained that the plaintiff, Lanty Graham, was entitled to one fifth, John Newlin and Florence, his wife, to one fifth, and Henry Miller and R. Martha, his wife, to one-fifth of the said rents and hires, which gives to each of said three plaintiffs the sum of $210.11 against the estate of Joseph Graham, deceased, and gives to each of said three plaintiffs the sum of $585.80, as against the defendants, John and Rebecca Graham, with interest on $400.00, part thereof, the proceeds of the slaves Ira and Stuart ; and the court therefore decreed that each of the said three plaintiffs recover against the defendant, Henry J. Kelly, administrator of Joseph Graham, deceased, the said sum of $210.11, with interest from the date of the decree, and one half of their costs in this suit, to be levied of the goods and chattels of his testator in his hands to be administered ; and that each of said three plaintiffs recover against the said John and Rebecca the sum of $585.80, with interest on $400.00 part thereof, from the 6th day of October, 1859, and with interest on the residue thereof," &c.

The defendant, John Graham, in May, 1869, took an appeal from said decree.to this Court ; and David Graham and John Graham became his securities therein. And afterwards, on the 11th day of March, 1870, this Court, on hearing the said appeal, reversed the said decree *in toto* and dismissed the plaintiffs' bill at their costs. See the case reported in 4 W. Va. 320. A more full statement of the proceedings had in said cause is con-

tained in the opinion of Judge Haymond in the case of *Graham et al.* v. *Graham et al.*, 10 W. Va. 355, to which I refer.

On the 9th day of March, 1868, there was an agreement and contract under seal made and entered into by the parties thereto, which is as follows:

"An article of agreement made and entered into, this 9th day of March, 1868, between Rebecca Graham of the first part and John Graham, James Graham, David Graham, and David G. Ballengee, of the second part, witnesseth: For and in consideration hereafter to be described, the said Rebecca Graham agrees and binds herself, her heirs, &c., to assign and convey to the said John Graham, James Graham and David G. Ballengee, all her right, title and interest that she may be entitled to by virtue of the last will and testament of her father, James Graham. But it is always to be understood that the said John Graham, James Graham, David Graham and David G. Ballengee are to support the said Rebecca Graham in a comfortable manner during her life, or she is to have her support out of said property; also the said John Graham, James Graham, David Graham and David G. Ballengee agree to pay all the cost of a suit which the said Rebecca Graham may be liable to pay, which suit was brought by Lanty Graham and others against her and John Graham, and also the costs of an appeal which may be taken in said suit from the decree of the judge of the circuit court of Monroe county, of West Virginia. The said suit was brought in the county aforesaid to recover certain land and negroes claimed by them by the last will and testament of the said James Graham, deceased. And the said James Graham, David Graham, and David G. Ballengee agree to go security to carry up an appeal from the decree of the circuit court for the county aforesaid to the Court of Appeals to set aside said decree, and the said John Graham is duly authorized by the said parties to order the clerk of the said court to make out all necessary records to petition for an appeal in the

1880
Special Term.

Graham et al
v.
Graham et al.

aforesaid suit and for the true performance of the above obligation, each party binds themselves, heirs, &c., in the penal sum of $1,000.00, well and truly to be paid to either party that may be injured by a breach of the above contract.

Given under our hands and seal this day and year first written.

|  | her | |
| Teste : | REBECCA R. ⋈ GRAHAM. | [Seal.] |
|  | mark. | |
|  | JOHN GRAHAM. | [Seal.] |
| J. W. GRAHAM. | JAMES GRAHAM. | [Seal.] |
| C. H. GRAHAM. | DAVID GRAHAM. | [Seal.] |
| (50 ct. stamp.) | DAVID G. BALLENGEE. | [Seal.] |

Afterwards on the 17th day of November, 1870, John Graham, David Graham and David G. Ballengee commenced suit on the equity side of the circuit court of said county of Monroe against the said Rebecca and James Graham ; and afterwards on the first Monday in January, 1871, the plaintiffs in said suit filed their bill therein. The said bill and answer of the defendant will be found in the said case of *Graham et al.* v. *Graham et al.*, 10 W. Va. 367–376, to which I here refer. For the sake of brevity I must content myself by referring to such portions of said bill, answers, &c., as I deem necessary here.    In this last named bill it is among other things substantially alleged, that prior to the institution of the suit first herein named the said Rebecca had executed a bill of sale to plaintiff John Graham of the slaves referred to ; that the object of this was not really a sale, for said John paid nothing, but it was a mode adopted by which she might dispose of the said slaves to other purchasers; and in carrying out said purpose said plaintiff, John, did make sale of the said slaves to one Bledsoe at the price of $2,000.00, $500 of which was paid in cash, and the residue in two drafts payable at the Staunton Bank, one for $1,000.00, and the other for $500.00; that the cash aforesaid and drafts were immediately transferred by said John to his mother, the said Rebecca, who

caused them to be invested in a bond by Matthew Arbuckle, of Greenbrier, to one Handley ; that this claim on Arbuckle was afterwards prosecuted to judgment, and some liability having arisen upon the part of the sheriff of Greenbrier, the claim was in some manner adjusted between the said Rebecca, or James Graham acting for her, and the sureties of said sheriff, and what is its present condition plaintiffs are unable to say ; that in consequence of the connection which said John had with the slaves aforesaid, which was only that of an agent of his mother, he was made a party defendant to said bill by Lanty Graham and others, and the bill sought to make him liable for the value of said slaves and their hires.

The said bill further alleges "that the appeal was taken and resulted in a decision reversing the said decree, and confirming the right of the said Rebecca to the land, as well as the slaves she had asserted a claim to." The bill also alleges in substance, that since the execution of said contract, &c., the said Rebecca has been brought under the evil influences of said James Graham, and not only repudiated her engagement but has actually gone so far as to make a conveyance to the said James Graham of the said tract of land, to be held by said James in his exclusive right, &c.; that according to the meaning and intent of said contract plaintiffs were to have their equal share of the proceeds of the sale of the slaves aforesaid, as was understood by the said Rebecca and the said James Graham ; notwithstanding the said James with the assent and by the connivance of the said Rebecca had held said proceeds, and failed and refused to allow plaintiffs any portion of the same, all which, plaintiffs charge, is in violation of their contract and their rights. In their said bill plaintiffs pray that the deed of conveyance from said Rebecca to James Graham be set aside and annulled ; that the contract therein referred to between plaintiffs and said James and Rebecca be specifically enforced by compelling the said Rebecca to make a conveyance of the tract of land referred to, ac-

cording to the terms of said contract; that proper pro-
vision may be made for the support of said Rebecca dur-
ing her life; that said James may be compelled to pay
to plaintiffs their proper shares of the money which
arose from the sale of the slaves referred to, and in the
event that the said James has expended any portion
thereof, that the said Rebecca as well as the said James
may be held answerable for the same," &c.

The defendant, James A. Graham, in his answer to
this bill, denies that the parties referred to in the bill
ever made any contract in reference to judgment ob-
tained by said Rebecca against Matthew Arbuckle; and he
avers that before the making of the contract in the bill
mentioned the said Rebecca for value received assigned
the said judgment to him, said James, an alleged copy of
which is filed with his answer marked number one, that
the original is left with Andrew Beard, of Greenbrier
county, who furnished the copy. He further says the
whole of this fund has not been realized, but it is outstand-
ing in the form of a bond on the said Andrew Beard and
securities; that this is the whole amount of the negro fund,
if it was the negro fund, a fact which he does not know,
that he never had any connection with; that if it was the
negro fund, and that fact is deemed material, he calls for
full proof thereof. He further says, that at the time
this Arbuckle fund was transferred to him, he had no
notice that any one had the slightest claim upon it except
the said Rebecca, and he does not yet know any such
thing, and he does not believe that any one had the slight-
est interest in it, etc.

The said deed from said Rebecca to James Graham for
said land in the bill mentioned is dated the 12th of Sep-
tember, 1870. Exhibit number one filed with the an-
swer of said James Graham is as follows: "For value re-
ceived I do hereby assign and transfer to James Graham
a judgment obtained by me in the circuit court of Green-
brier county against Matthew Arbuckle for $1,500.00,
with interest on the amount and the costs, without any

*recourse* on me or my heirs. Witness my hand and seal this the 15th day of June, 1867.

her<br>
"REBECCA ☑ GRAHAM.<br>
mark

"Witness: James T. Dempsey."

The defendant, Rebecca, in her answer denies that the said Arbuckle judgment was embraced, or intended to be, by the contract in the bill mentioned, but says that before the date of said contract said judgment had been assigned to James Graham for valuable consideration ; that there seemed to be some doubt whether or not said judgment could be made, that she, deeming it very important to her that she should realize something from said judgment, proposed to James Graham to transfer to him the benefit of said judgment for the sum of $1,095.00, provided he would take the same without recourse upon her, which proposition the said James accepted and has paid to her the said sum of $1,095.00.

At a circuit court of said county held on the 23d day of May, 1873, the cause came on to be heard upon the bill, &c.; and among other things, the court decreed, " that the proceeds of the sale of the slaves, hereinbefore referred to and known as the Arbuckle debt, is the property of and belongs to John Graham, James Graham, David Graham and David G. Ballengee, and that any evidence of said debt in the hands of said James Graham or Rebecca Graham, or any portion of the same which may have been collected by either, be delivered and paid over to M. J. Kester, commissioner of this court, who is hereby appointed a special receiver for that purpose, who shall collect and hold the same subject to the provisions of this decree ; and it is further ordered and decreed that commissioner Kester do take, state and report an account, showing how much of the said Arbuckle debt has been paid to either Rebecca Graham or James Graham, and when paid, and how much is still due and unpaid ; and the said commissioner shall take a further account, showing how much money the said

James Graham has actually and necessarily laid out, &c. And the court further decreed that said Kester, before receiving the fund aforesaid, shall give bond with good security in the penalty of $5,000.00 with condition according to law, to be approved by the Judge," &c.

From this last named degree the defendant James Graham petitioned for and obtained an appeal to this Court; and on hearing the cause this Court for reasons stated in the written opinion filed in the cause on the 1st day of May, 1877, reversed the said decree and remanded the cause to the said circuit court for further proceedings there to be had according to the principles and points settled in said written opinion, and further according to the rules and principles governing courts of equity.

This Court held in the syllabus of the case substantially, that said female slave so bequeathed to said Rebecca by said will passed to her said husband, Joseph Graham, by virtue of his marital rights, and that before and at the time of his death the said female slave and her increase were the property of the said Joseph Graham, and that upon his death his wife, Rebecca, who survived him, had no interest in the said slaves (in the absence of a will of her said husband directing otherwise) except as one of the distributees of her said husband; and that the said agreement of the 9th of March, 1868, made by and between said Rebecca of the first part and the said John Graham, James Graham, David Graham and David G. Ballengee did not embrace or include the said slaves, or either of them, or the proceeds of the sale of said slaves, Ira and Stuart, and the said Arbuckle claim in which said proceeds were invested; and also, that the legal heirs and personal representatives of said Joseph Graham were not necessary parties to said suit. See *Graham et al.* v. *Graham et al.*, 10 W. Va. 355.

It appears that on the 17th day of October, 1877, the circuit court of Monroe county made and entered the following decree in the cause, viz:

"This cause having been taken to the Supreme Court

of Appeals of West Virginia, and the decree rendered therein by this court reversed, and the cause remanded for further proceedings to be had therein, came on this 17th day of October, 1877, to be again heard on the papers formerly read, and the decree of the Supreme Court of Appeals remanding the cause to this court, and upon the petition of H. J. Kelly, administrator of Joseph Graham, deceased, and the arguments of counsel. Upon consideration it is adjudged, ordered and decreed, that commissioner M. J. Kester do take, state and report the accounts between the parties as indicated in the opinion and decree of the said Supreme Court of Appeals, embracing the cost of keeping and supporting Rebecca Graham, and the rents and profits of the tract of two hundred and eighty-six acres of land in the bill and proceedings mentioned, with any other special matter deemed material by himself or which may be required by either party.

"And it is further adjudged, ordered and decreed that Wm. Haynes, John Houchman and Thos. Johnson be and they are hereby appointed commissioners to go upon the tract of two hundred and eighty-six acres of land in the bill and proceedings mentioned, and lay off and divide the same into four equal parts, having regard to quality and quantity, and assign one of said equal four parts to each of the following persons, to-wit: John Graham, James Graham, David Graham and David G. Ballengee, and make report of their proceedings to court, and upon the coming in of said report the court will provide for the conveyance of the title thereof to the parties respectively entitled, retaining a lien, if necessary and proper, thereon for the payment of any balance due to either party as may be shown by the aforesaid account to be taken by commissioner Kester. And it is ordered that said petition be filed, and that said Kelly be made a party plaintiff in this suit, and process is awarded against James Graham, returnable to the first day of the next term of this court to answer the said petition."

The following is the petition of Henry J. Kelly, late sheriff of Monroe county, and as such administrator with the will annexed of Joseph Graham, deceased:

"To the Hon. Homer A. Holt.

"*Judge of the Circuit Court of Monroe County:*

"The petition of H. J. Kelly, late sheriff of Monroe county, and as such administrator *c. t. a.* of Joseph Graham, deceased, would respectfully represent that a suit in chancery is now pending in the circuit court of Monroe county, in the style of *John Graham, et al.* v. *James Graham et al.* From the proceedings in said cause it appears that there is a fund in the hands of the receiver of this court which belongs to the personal estate of said Joseph Graham, which therefore belongs to him in the capacity of administrator aforesaid, and he is advised that the same should be paid to him as such administrator. He is informed that James Graham is the only person claiming said fund adversely to the petitioner. He refers to the papers, pleadings, exhibits and evidence in said suit to establish his right to said fund, and he prays that this petition may be filed in the suit, and that said money may be paid to him. May process be awarded upon this petition against James Graham to answer this petition, and may such other relief be granted him upon this petition as the nature of this case requires or to equity may seem meet. And he will ever pray, &c.

"H. J. Kelly,
"*Adm'r of Joseph Graham.*"

It appears that on the 10th day of May, 1878, the defendant, James Graham, filed his answer to the petition of Henry J. Kelly, administrator of Joseph Graham, deceased, filed in this cause by leave of the court, and the petitioner replied generally. The said answer of James Graham is as follows:

"The defendant, James Graham, for demurrer to the petition of Henry J. Kelly, administrator of Joseph Graham, deceased, filed in this cause, and to which the said James Graham is made defendant, saith that there is

nothing in said petition taken in connection with the bill and other pleadings in the cause referred to, which entitles the petitioner to any relief at the hands of the court. He has no equitable claim upon the fund which he seeks to recover; it is a legal fund and can be recovered, if at all, only in a court of law. The mere fact that a court of equity has taken charge of this legal fund does not give the court jurisdiction to indicate its destination. It will remit it back to the hands from which it received it. It was only taken possession of to abide the result of the suit, and the court having decided that the contract referred to did not embrace the negro fund—the fund in question—in effect dismissed the bill as to it, and this court would restore it to the party from whom it received it. For this and other reasons which might be assigned, he demurs to said petition and prays that the same may avail him as fully as if more formally pleaded.

"And for answer to said petition the said respondent saith that the fund referred to was derived from the sale of two slaves, Ira and Stuart, sold by John Graham, one of the plaintiffs, acting as agent for his mother, Rebecca Graham, to a Mr. Bledsoe, in the year 1858 or 1859, she claiming to have an absolute interest in said slaves.

" The slaves were sold for $2,000.00, of which $500.00 were paid down. For the balance Bledsoe gave two checks upon a Staunton bank, one for $1,000.00, the other for $500.00. These drafts or checks were immediately transferred to the said Rebecca, who had them invested in a bond of Matthew Arbuckle, and the amounts afterwards collected off Arbuckle by Andrew Beard, sheriff of Greenbrier county. The said Rebecca Graham transferred the debt to respondent on the 15th day of June, 1867, and it is now in the hands of the receiver of the court. Respondent for these reasons relies on and pleads the statute of limitations in bar of the said petitioner's claim and remedy.

" Respondent also avers that said petitioner has no

just claim, either in law or equity, to said fund; and the said petitioner having referred to the record of the case of *Graham et al.* v. *Graham et al.*, as evidence to sustain his pretensions, respondent does the same, and maintains that the claim is too stale to be now enforced. It was bad in its inception and grows worse daily by age.

" Respondent denies every allegation and statement in the petition contained not herein expressly admitted. And having made answer to said petition, he prays hence to be dismissed, &c."

Afterwards on the 17th day of May, 1878, the said circuit court made and entered in the cause the following decree, viz:

JOHN GRAHAM *et al.* v. JAMES GRAHAM *et al.*—In chancery.

" This cause came on again this day to be further heard upon the papers formerly read, upon the demurrer and answer of James Graham to the petition of H. J. Kelly, administrator of Joseph Graham, deceased, joinder in said demurrer, general replication to said answer, the report of M. J. Kester, a commissioner of this court, filed on the 18th day April, 1878, and the exceptions thereto, and upon the report of William Haynes, John Henchman and Thomas Johnson, commissioners appointed by a former decree of this court to partition the two hundred and eighty-six acre tract of land between the four parties to the contract of March 9th, 1868, to which there is no exception, and was argued by counsel. On consideration whereof, the court doth overrule said demurrer; and being of opinion that the proceeds of the sale in the proceedings mentioned was personal estate of the decedent, Joseph Graham, the legal title to which, upon the death of said Graham, passed to his personal representative, H. J. Kelly, and that the claim of James Graham to said fund is not perfected by limitation, but not deeming it necessary to order the payment of the funds into the hands of the receiver of this court to H. J. Kelley to be disbursed by him at this time, it is ad-

judged, ordered and decreed that this cause be re-committed to M. J. Kester, commissioner of this court, who shall take an account showing how much was realized from the sale of said negroes, Ira and Stuart, by whom and when collected, and who are entitled to the proceeds of said negroes as distributees of Joseph Graham, and whether any of said distributees have received any portion of said fund, and how much and when.

"And for reasons appearing to the court, the exceptions to the first statement of commissioner Kester's report, together with said report, are re-committed to said commissioner, with leave to any of the parties to take additional testimony; and said commissioner is directed to express his conclusion as to the issues, and if he makes alternate statements, to denote which one is adopted by by him as the true one. And there being no exceptions to the report of said commissioners partitioning the two hundred and eighty six acres of land between the parties, it is ordered that said report be confirmed, and that each party may sue out of the clerk's office of this court a writ of *habere facias possessionem* for his part of said property as assigned by said commissioners."

Afterwards at a circuit court continued and held for the county of Monroe, at the court-house thereof, on Monday, the 19th day of May, 1879, the said circuit court made and entered the following decree:

"JOHN GRAHAM *et al.* v. JAMES GRAHAM *et al.*—In chancery.

"This cause came on again this day to be heard upon the papers formerly read, and the report of M. J. Kester, commissioner, filed on the 8th day of May, 1879, with the exceptions thereto by both the plaintiffs and the defendant, James Graham, and was argued by counsel. On consideration whereof, the court doth overrule the exceptions of the plaintiffs to the first and third statements of said report, and the defendant's exception to the report as to the slave fund, and sustains defendant's exception to the second statement of said report. But the

*1880*
*Special Term.*

Graham *et al.*
v.
Graham *et al*

said report not being sufficiently full as to the parties entitled to said slave fund, and in what proportions, it is adjudged, ordered and decreed that the said report be recommitted to said commissioner with instructions to make a statement showing how much of said slave fund is due to each of the parties entitled thereto, and how much, if any, James Graham has received of said fund over and above his interest therein, and how much, if any, he should pay over to each of the other parties entitled to said fund to equalize the same. And it appearing to the court probable that the amount received by said James Graham in excess of what was due to him may be greater than the amount due to him by the first and third statements of said report, the court declines at this time to decree further as to the amounts due by said statements until the coming in of the report of commissioner Kester directed to be made by this decree."

The report of commissioner Kester, referred to in the foregoing decree, and filed May 8, 1879, with the exceptions thereon endorsed, is as follows:

JOHN GRAHAM *et al.* v. JAS. GRAHAM *et al.*—In Chancery.—In Monroe Circuit Court.

STATEMENT NO. 1.

Showing the amount due James Graham from the estate of Rebecca Graham, deceased, on account of her support, &c. :

THE ESTATE OF REBECCA GRAHAM, DEC'D,
          IN ACCOUNT WITH JAMES GRAHAM,                   DR.
1871, March—.—To support of Rebecca Graham,
                 one year to date.................. $150 00
                        CR.
1871, March—.—By rent of land one year to date..   87 50
                                                   ———————
                                                    $62 50
                        DR.
   To interest on above balance to May 12, 1879...   30 62
                                                   ———————   $93 12
1872, March—.—To support of Rebecca Graham
                 one year to date............. ... $150 00
                        DEDUCT CR.
1872, March—.—For rent of land one year to date,    87 50
                                                   ———————
                                                    $62 50

1880
Special Term.

Graham et al.
   v.
Graham et al.

Dr.

To interest on above balance to May 12, 1879...   26 87

$89 37

1873, March—.—To support of Rebecca Graham
        one year to date................ . $150 00

DEDUCT CR.

1873, March—.—For rent of land one year ....... .   87 50

$62 50

$244 99

Dr.

To amt. brought forward....... ...................... ... $244 99
Interest on last balance to May 12, 1879.. . ........   23 12

$268 11

1874, March—.—To support of Rebecca Graham
        for the year ending this date... $150 00

DEDUCT CR.

1874, March—.—For rent of land one year to date,   87 50

$62 50

To interst on above bal. to May 12, 1875........   19 37

$81 87

1875, March—.—To support of Rebecca Graham
        one year to date.............. ...... $150 00

DEDUCT CR.

1875, March—.—For rent of land one year to
        to date..... ..... ....... ...   87 50

$62 50

To interest on this bal. to May....................
        12, 1879..............................   15 62

$78 12

1876, Feb. 28.—To support of Rebecca Graham
        from March 11, 1875, to date.   $145 42

DEDUCT CR.

1876, March --.—For rent of land one year to date   87 50

$57 92

Interest on same to May 12, 1879................ .........   12 01

$69 93

$498 03

DEDUCT CR.

1877, March —.—For rent of land one year to date $87 50
        Interest on same to May 12, 1879.   16 62
1878, March 10.—For rent of land for one year to
        date,...................................   87 50
Interest to May 12, 1879........... ................    6 12

$197 74

1879, May 12.—Balance due...........................   $300 29

STATEMENT NO. 2.

Showing the amount due from James Graham to
estate of Rebecca Graham, deceased.

1880
Special Term.

Graham *et al.*
v.
Graham *et al.*

JAMES GRAHAM,

IN ACCOUNT WITH REBECCA GRAHAM'S ESTATE,    DR.

1878, March 11.—To rent of land from March 11,
1870, to March 11, 1878, 8
years at $100 per yer. .......... $800 00
1879, May 12.—To interest on the 7th year's rent
from March 11, 1877, to date    13 00
1879, May 12.—To interest on 8th year's rent
from March 11, 1878, to date.    7 00
————    $820 00

CREDITS.

1876, Feb. 28.—For supporting Rebecca Graham
from March 11, 1870, to date,
at $100 per year....................    596 95
————
Balances due estate as of May 12, 1879............    $223 05

STATEMENT NO. 3.

Showing what is due Jas. Graham on account of taxes,
&c., paid by him :

JOHN GRAHAM, DAVID GRAHAM and D. G. BALLENGEE,

IN ACCOUNT WITH JAMES GRAHAM,    DR.

1879, May 12.—For amount of taxes paid on the 286 acres,
&c., including interest as per account,
Ex. "X" $-\frac{3}{4}$ of the same..................    $299 56

"To HON. H. A. HOLT,

"*Judge of Monroe Circuit Court :*

"The undersigned, a commissioner of said court, to
whom the chancery suit of *John Graham et al.* v. *James
Graham et al.* was recommitted by a decree entered there-
in at the May term 1878, to retake the accounts in said
decree mentioned, &c., begs leave to respectfully report,
that pursuant to the notice herewith filed he has per-
formed said duty, and presents to the consideration of
the court the foregoing statements.

"By the contract of March 9, 1870, referred to in this
cause, the said James Graham, David Graham, John Gra-
ham and David G. Ballengee, were to support said Rebec-
ca Graham in a comfortable manner during her life, or she
was to have her support out of the property therein men-
tioned. James, John and David Graham each held and oc-
cupied portions of this property.   A large number of
witnesses have been examined in the case, as shown by
the depositions filed in the cause, as to what would be a

fair compensation for the support of Mrs. Rebecca Graham from the 9th of March, 1870, until the time of her death, and as to the rental value of the land which James Graham had in possession during same time.

"The testimony shows a very wide difference in the estimates of such rental value and compensation as made by the witnesses for the plaintiffs, and as made by those called for the defendants. The commissioner, after giving it his best consideration, is of opinion that—

"Statement No. 1 is the true one and should be adopted by the court.

"Statement No. 2, made out at the instance of the plaintiffs, and is made out upon the hypothesis that the rental of the land in possession of James Graham is sufficient for her support.

"Statement No. 3 shows the amount due James Graham from John and David Graham and David G. Ballengee on account of taxes paid by him, each to pay one third thereof, and who should each also pay him one fourth of the amount found due by statement number one.

" It appears from the evidence taken in the cause that the negroes, Ira and Stuart, were sold by Rebecca Graham for the sum of $2,000.00. With a portion of the proceeds she purchased from Harvey Handly a bond on Matthew Arbuckle. The said sum of $2,000.00 was paid to her. Upon the Arbuckle debt, payments have been made to James Graham as follows:

| | | | |
|---|---|---|---|
| 1860, | Feb. | 16 | $300 00 |
| " | Sept. | 20 | 400 00 |
| 1870, | " | 22 | 1,104 20 |

" Judgment was rendered for bal. to wit: $1.101.85, with interest from June 11, 1873, until paid, and costs, $25.20.

" This judgment was collected by R. F. Dennis, attorney, &c., and after deducting his fee and commission and the costs, loaned the balance, $1,091.60, under an order of this court in this cause, to James F. Patton, on the 14th of October, 1873, taking his bond therefor, with

79

A. T. Caperton as security. Said bond of $1,091.60 should bear compound interest from its date. (See Code, p. 635, § 23.) The fund arising from the sale of the negroes is due to the parties entitled thereto as follows : To the estate of Rebecca Graham, one-third, and the residue to be divided equally between James, John and David Graham, and the children of Rebecca Ballengee.

"All which is respectfully submitted,

"M. J. KESTER,
"*Com. Monroe Circuit Court.*"

The following are the exceptions to the above report, viz :

## "EXCEPTIONS.

"This report of commissioner Kester is excepted to so far as the second statement is concerned, made out and reported at the instance of the plaintiff's counsel, and which has reference to the rents and profits of the farm and the support of Rebecca Graham, because it is not supported by the proofs.

"Second exception.—Because the commissioner has charged James Graham with the slave fund, the proceeds of the two slaves, Ira and Stuart. This fund belonged to Mrs. Rebecca Graham ; the slaves were hers, and she, through her agent, John Graham, on the — day of——, 1859, sold them to —— Bledsoe, receiving money and checks for the price, $2,000.00, and on the 15th of June, 1867, she transferred the uncollected balance of the money to James Graham, who pleads in his answer and herein the exception the statute of limitations. Whether the slaves were rightfully her property or not is immaterial; she claimed them, and having held possession of them and their proceeds for more than five years, the statute is a complete bar. There is no trust alleged or proved which would avoid the statute. It is a plain, naked case of adverse claim with possession to sustain it.

"S. PRICE,
"N. M. LOWRY,
"*Counsel for James Graham.*

"May 13, 1879."

" EXCEPTIONS.

" Statement number one of within report is excepted to, because the evidence in the cause clearly shows that Rebecca Graham, after the contract of March 28, 1868, which provided that she should have a support out of the property, remained in possession of it, enjoying it for her own use up to the time of her death, and that James Graham contributed nothing towards her support, but on the contrary, received from that property his own support.

" Statement number three is excepted to, because the evidence shows that the property was amply sufficient to support Mrs. Graham and pay the taxes, and James Graham, who was living on it, derived all the benefit from the property over and above the support of Rebecca Graham.

" JAS. F. PATTON,

"*Att'y for John & David Graham and David Ballengee.*"

The defendant, James Graham, has obtained from this court upon his petition and assignment of error an appeal from and *supersedeas* to so much of each of the two decrees rendered in the cause upon and relating to the matter of the petition of H. J. Kelly, administrator of Joseph Graham, deceased, which said decrees were rendered respectively on the 17th day of May, 1878, and the 19th day of May, 1879, as relates to and adjudicates as to the proceeds of the sale of the negro slaves, Ira and Stuart, which proceeds of sale are referred to in said decree of the 19th day of May, 1879, as the " negro fund."

*Price & Preston,* for appellant.

No appearance for appellee.

HAYMOND, JUDGE, delivered the opinion of the Court:

The errors assigned in the petition are substantially, first, that the demurrer to the petition of Kelly, administrator, ought to have been sustained; and second, be-

cause the statute of limitations was a bar to any relief sought by the petition.·

I propose to consider these two assignments of error together. Waiving all technical questions in the case I proceed at once to consider the main question in the cause; and that is, whether the petitioner Kelly, administrator, was barred by the statute of limitations in this case. From the pleadings and evidence in the cause I apprehend there can be no doubt, that the legal title to the slaves, Dinah, Ira and Stuart, was by operation of law vested in the petitioner, Henry J. Kelly, as administrator of Joseph Graham, deceased. The said petitioner, it appears, was appointed as such administrator before the commencement of the said suit of Lanty Graham and others against said Rebecca Graham and others, which, as we have seen, was commenced on the 5th day of October, 1859, more than twelve years prior to the commencement of this suit, and more than seventeen years prior to the filing of said petition, and also more than seven years before the final decision by this Court of the cause of said Lanty Graham and others against said Rebecca Graham and others.

Mr. Story in his work on Eq. Plead., § 502, among other things says: "The same rule would lie to a bill for the redemption of a mortgage, after a great length of time had elapsed, it the bill were so framed as to present the objection without any attendant circumstances to obviate it; for in this and other like cases, courts of equity act upon the analogy of the law as to the statutes of limitation, and will not entertain a suit, if it would be barred at law. If the objection does not appear on the face of the bill, it may be taken by way of plea, or by way of answer." Again at section 750 and 751 of same book, Mr. Story says: "First. Pleas in bar, founded on matter, which is made a bar by statute. Pleas of this sort are, (1.) The statute of limitations, &c. This is a good bar to a suit in equity, as it is at law; and it will ordinarily bar both the claim of the debt, and the

discovery, when the debt became due. Indeed, when
the objection appears on the face of the bill, it may, as
we have already seen, be taken by way of demurrer," &c.
In same book, section 756, Mr. Story says: " In some of
the foregoing cases courts of equity seem to act upon the
positive injunctions of the statutes of limitations; for in
a case of concurrent jurisdiction, (as in cases of account,
or other debts) the statutes would seem to apply equally
to courts of law and equity. But in a great variety of
other cases courts of equity may correctly be said to act
not so much in obedience to the law. For although in
such cases suits in equity are not within the words of the
statute, yet courts of equity generally adopt it as a positive
rule and apply it by parity of reasoning to cases not
within it."

There is no doubt but that the said Kelly as adminis-
trator of the said Joseph Graham, deceased, could have
brought his action of trover and conversion against the
said Rebecca Graham at any time after she sold the said
slaves, Ira and Stuart, for the value thereof, within five
years after she sold them, and converted them to her
own use. And he might have brought an action of de-
tinue against the said Rebecca for the detention of said
slaves, before she sold and converted them to her own
use, if he was appointed administrator before she con-
verted them to her use by the sale thereof. But it does
not appear in the case, whether said Kelly was appointed
administrator before she sold the said slaves, or not. It
does appear clearly from the pleadings and evidence in
the cause, that the said Rebecca had possession of said
slaves claiming them as her own as against all others,
until she sold them, and that she sold and converted them
as her own property before the year 1859, and before the
first suit against her hereinbefore mentioned was com-
menced, and it is very clear that the right of action
against her by said Kelly as administrator for the value
of said slaves was barred, before the second suit in equity,
that is before this suit was commenced against her.

1880
Special Term.

Graham *et al.*
v.
Graham *et al.*

Under these circumstances it seems clear to me, that the right of action of said Kelly as administrator of said Joseph Graham against the said Rebecca Graham was at law barred by the statute of limitations long before the commencement of this suit or the filing of said petition by the said Kelly, administrator in this cause ; and the right of action being barred at law, it must be considered and held in this case under the circumstances appearing therein, that the said Kelly, as administrator, is barred in equity from the right to recover the proceeds of the sale thereof, or the value of said slaves, against the said Rebecca or the said James Graham, her assignee. The right of said Kelly, as administrator, to recover the value of said slaves against the said Rebecca is a mere legal right; and it is, as we have seen long since, barred by the statute of limitations, and it is barred in equity as to the proceeds of the sale thereof as against her assignee.

Whether the proceeds of the sale of said negroes, Ira and Stuart, in justice and equity belong to the said Rebecca, or her estate, if she is dead, as against her assignee, said James, I do not now pretend to decide, as that question is not now properly before us for decision. Although the said negroes, Ira and Stuart, did not in fact belong to the said Rebecca at the death of her said husband, still she had possession of them, always after the death of her husband claiming them as her own, and sold them as her property ; and, as before stated, any action at law against her for the sale and conversion of the same has been barred at law for many years, and it would be strange indeed, if said Kelly, administrator, was barred of an action at law for the value of said slaves, if he could pursue and recover the proceeds of the sale thereof in equity, either in the hands of said Rebecca or her assignee thereof, under such circumstances. It seems to me very clear that he cannot do so in this case. The said Rebecca cannot be considered as having had possession of said slaves as trustee, or as having sold them as

such, but she had possession of the same, claiming them as her own, and sold them as her own property many years ago, as we have seen. Regularly the said Rebecca or, if she be dead, her personal representative, should perhaps have been made a party defendant to said petition; but as against her assignee the said Kelly, administrator, is clearly barred by the statute of limitations. I deem it unnecessary to further remark upon that subject.

It is quite probable, from what now appears, that the said Kelly, administrator, was misled and perhaps to some extent obstructed by the distributees or a large portion of them, except Rebecca, from bringing suit against the said Rebecca for said negro slaves or the value thereof by their adverse claims and different suits in relation thereto; but if this be so, it cannot prevent the statute of limitations running as against the said administrator at law in favor of said Rebecca or her assignee, or in this case as to the proceeds of the sale thereof in equity.

The counsel for the appellees complains in his printed brief, that the court erred in overruling the exceptions of John Graham and others to the commissioner's report, and adopted statements numbers one and three of said report. I do not consider these matters as being covered by this appeal, or as being proper now to be considered in the present state of the cause in relation thereto in the court below. The said Kelly as administrator as aforesaid had no interest whatever in the matters included in said last named exceptions. I therefore do not now decide any thing connected with said matters of account so excepted to as aforesaid, but only decide as to the matters arising upon the petition of the said Kelly as administrator of said Joseph Graham, deceased, and said James Graham and the decrees of the court therein.

For the reasons above stated I am of opinion, that the said decrees of the 17th day of May, 1878, and the 19th day of May, 1879, in so far as they relate to and adjudi-

cate as to the proceeds of the sale of the negro slaves, Ira and Stuart, which proceeds of sale are referred to in said decree of the 19th day of May, 1879, as the "negro fund," be and the same must be reversed with costs in favor of the appellant against the administrator, Kelly, but no further, as the other matters of said decrees are not covered by the appeal and *supersedeas* in this cause and cannot properly be considered now by this court. And this court proceeding to render such decree in the cause as the circuit court should have rendered, it is adjudged, ordered and decreed that this cause, as to H. J. Kelly, administrator of Joseph Graham, deceased, be dismissed, and that the petition of said Kelly, administrator, be also dismissed, but without costs as against said Kelly, administrator as aforesaid. And this cause as to all other matters is remanded to said circuit court for such further proceedings as are in accordance with the principles and rules of courts of equity.

. THE OTHER JUDGES CONCURRED.

DECREE REVERSED IN PART. CAUSE REMANDED.